COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Alston
Argued at Richmond, Virginia


CYNTHIA CENARICE THORNTON

                                                         MEMORANDUM OPINION[*] BY
v.        Record No. 2010-08-2                           JUDGE LARRY G. ELDER
                                                         SEPTEMBER 15, 2009

COMMONWEALTH OF VIRGINIA


                   FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                              Edward L. Hogshire, Judge

            Michael J. Hallahan, II for appellant.

            Virginia B. Theisen, Senior Assistant Attorney General (William C.
            Mims, Attorney General, on brief), for appellee.


        Cynthia Cenarice Thornton (appellant) appeals from her jury trial conviction for felony

child neglect in violation of Code § 18.2-371.1(B).  On appeal, she contends the evidence was

insufficient to support her conviction because it failed to show she withheld her son's

medication, failed to show her behavior caused a substantial risk to his life or health, and failed

to show that she knew withholding his medication was likely to cause such a risk.  We hold the

record on appeal fails to establish appellant preserved any of these arguments for appeal as

required by Rule 5A:18.  We hold further that Rule 5A:18's ends of justice exception does not

permit us to review these assignments of error on appeal because the record fails to establish an

error that was clear, substantial, and material.  Thus, we affirm.

        Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis

for reversal unless the objection was stated together with the grounds therefor at the time of the

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." "The primary function of Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials." Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992) (en banc).

Appellant was indicted for violating both subsections (A) and (B) of Code § 18.2-371.1. The Commonwealth conceded the facts supporting each indictment were the same and that it intended for the jury to convict appellant for only one of the charged counts.[1] At the close of the Commonwealth's evidence, appellant moved to strike on two grounds. She argued first that the evidence failed to show permanent or serious injury to N.T., an argument relevant only to the Code § 18.2-371.1(A) charge because only that offense required proof of a "willful act or omission or refusal to provide any necessary care for the child's health [that] causes or permits *serious injury* to the life or health of [the] child." Code § 18.2-371.1(A) (emphasis added). That argument was not relevant to appellant's conviction for violating Code § 18.2-371.1(B), which did not require proof of permanent or serious injury. See Code § 18.2-371.1(B) ("Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony."); Duncan v. Commonwealth, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004) (holding that subsection (B), unlike subsection (A), "does not require that a child actually suffer serious injury as a result of a defendant's acts or omissions").

---

[1] Appellant also was indicted for the misdemeanor of contributing to the abuse or neglect of a minor, which the Commonwealth conceded also was intended to be an alternative charge.

Appellant's second argument on her motion to strike was that "the clearest evidence of a time when there was neglect or acts or omissions that harmed [N.T.], if you believe the Commonwealth's evidence and take it in the light most favorable to the Commonwealth, was at a time when [appellant] and [N.T.] were living in [a different jurisdiction in Virginia]." This constituted a challenge to the court's venue rather than a challenge to the sufficiency of the evidence to prove a violation of Code § 18.2-371.1(A) or (B) and arguably amounted to an implicit concession that the evidence, viewed in the light most favorable to the Commonwealth, in fact was sufficient to prove "neglect or acts or omissions that harmed [N.T.]."

Appellant renewed her motion to strike at the close of all the evidence, but she did not advance any additional grounds therefor, stating merely, "All the same and more," when the trial court inquired whether appellant "want[ed] to be heard any further on [her motion]."

On brief on appeal, appellant alleges that she moved to set aside the verdict, but she cites no part of the appendix or record indicating that she made such a motion, and a review of the record on appeal fails to substantiate that she made such a motion.[2]

Appellant asks us to invoke the ends of justice exception to Rule 5A:18. "'The ends of justice exception is narrow and is to be used sparingly . . . .'" Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 269, 272 (1997) (quoting Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989)). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Id. at 221, 487 S.E.2d at 272. In addition, "[t]he trial error must be 'clear, substantial and material.'" Id. (quoting Brown, 8 Va. App. at 132, 380 S.E.2d at 11). Ordinarily, in the criminal context, application of the ends of justice exception is appropriate where "[the accused]

---

[2] The record contains no written motion to set aside the verdict. The sentencing order does not indicate that appellant made such a motion. No transcript of the sentencing hearing is contained in the record.

was convicted for conduct that was not a criminal offense" or "the record . . . affirmatively proves that an element of the offense did not occur." Id. at 221-22, 487 S.E.2d at 272-73; see also Jimenez v. Commonwealth, 241 Va. 244, 248, 250, 402 S.E.2d 678, 679, 681 (1991) ("[W]hen a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter.").

Here, the record fails to establish the applicability of the ends of justice exception because the evidence, viewed in the light most favorable to the Commonwealth, the prevailing party in the trial court, Jones v. Commonwealth, 272 Va. 692, 695, 636 S.E.2d 403, 404 (2006), was sufficient to prove that appellant failed to give N.T. his AIDS medications, that her actions posed a substantial risk of injury to N.T.'s health, and that appellant knew or should have known that failing to give N.T. his medications as prescribed posed such a substantial risk of injury.

A conviction for violating subsection (B) of Code § 18.2-371.1

> proscribes conduct that is so "gross, wanton and culpable" as to demonstrate a "reckless disregard" for the child's life. . . . [S]uch "reckless disregard" can be shown by conduct that subjects a child to a substantial risk of serious injury, as well as to a risk of death, because exposure to either type of risk can endanger the child's life.

Duncan, 267 Va. at 385, 593 S.E.2d at 215.

N.T., who was sixteen at the time of trial, testified that appellant did not give him all the AIDS medications that Dr. Townsend prescribed. N.T. said appellant told him too much medication would be bad for him, and she gave him his prescribed medications for only a few weeks before each of N.T.'s appointments with Dr. Townsend. Additional evidence, including the testimony of Dr. Townsend concerning the body's response to the HIV infection, the medications prescribed for the treatment of N.T.'s AIDS, and the results of N.T.'s blood tests to monitor N.T.'s condition, supported Dr. Townsend's testimony that N.T. was not receiving the prescribed dosages of his medications while living with appellant. The testimony of various

- 4 -

employees of the AIDS Services Group that appellant admitted withholding N.T.'s medications and the detailed testimony of a pharmacist where appellant had N.T.'s prescriptions filled that appellant did not fill them regularly also supported this finding.

The evidence also supported a finding that appellant's failure to give N.T. his prescribed medications posed a substantial risk of injury to N.T. and that appellant had knowledge of this risk. The language of the statute "demonstrates a legislative intent" to prohibit parents and other caregivers from engaging in conduct that has the "potential of endangering a child's life," id., and "'make[s] it not improbable that injury will be occasioned,'" Barrett v. Commonwealth, 268 Va. 170, 183, 597 S.E.2d 104, 111 (2004) (quoting Cable v. Commonwealth, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992)).

Here, Dr. Townsend explained that the AIDS virus, if not properly controlled by medication, attacks the body's CD-4 cells and that if CD-4 levels fall below a level of 200, it indicates the immune system has weakened and cannot adequately fight infections, putting that person at a significantly increased risk for opportunistic infections and malignancies. Although N.T.'s CD-4 cell levels were good when Dr. Townsend first started treating him in 2001, the prolonged elevation of N.T.'s viral load between 2001 and 2006, due to inconsistent use of his prescribed AIDS medications while in appellant's care, caused N.T.'s CD-4 levels to decline to the point where he was, in fact, at much greater risk of opportunistic infections and malignancies. Despite N.T.'s proper use of his prescribed AIDS medications after being removed from appellant's care, N.T.'s CD-4 levels continued to hover in the range of 100 to 150 for more than a year prior to appellant's trial. Townsend testified that although N.T. had not developed any opportunistic illnesses associated with his low CD-4 level during that period, when a patient's viral load "skyrocket[s]" and causes his CD-4 cell level to fall below 200, he is "at risk for significant illness" like the opportunistic infection N.T. had contracted and almost died from

while in appellant's care when he was six months old. Whether N.T.'s CD-4 cell count ever rises above 200 again is not dispositive of the sufficiency issue because appellant's behavior in failing to give N.T. his medications regularly, which the evidence established clearly precipitated the fall in his CD-4 cell levels to below 200, was itself sufficient to create a substantial risk of injury to N.T. for the period from May 2003 forward. See Jones, 272 Va. at 700-01, 636 S.E.2d at 407-08 (holding a fact finder may infer that a defendant "knew or should have known that placing fourteen capsules of heroin [in a childproof container] and a plate with cocaine residue in the same room as her unattended eight-year old [sic] son created a substantial risk of serious injury").

Finally, the evidence, viewed in the light most favorable to the Commonwealth, was also sufficient to prove appellant knew or should have known her behavior in failing to give N.T. his medications regularly created a substantial risk to N.T.'s life or health. Dr. Townsend testified that he explained to appellant the importance of N.T.'s taking all his medications as prescribed and the potential consequences of his failing to do so. Townsend said he also discussed these issues with appellant repeatedly as he watched N.T.'s CD-4 cell levels continue to decrease between 2001 and 2006 while N.T. was in appellant's care. ASG caseworker Roxanne Jones, who worked with appellant on a regular basis, also emphasized to appellant the importance of giving N.T. his prescribed medications. Finally, appellant herself admitted at trial that she "[knew] how important [N.T.'s prescribed AIDS] medicine [was] to his life."

For these reasons, we conclude appellant failed to preserve her assignments of error for appeal and that the ends of justice exception to Rule 5A:18 does not apply to allow consideration of these assignments of error on the merits. Thus, we affirm appellant's conviction.

Affirmed.